## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**GABRIEL FLORES,**

        **Petitioner,**

**v.**                                        **No. CIV 05-819 MCA/LFG**

**ROBERT ULIBARRI, et al.,**

        **Respondents.**

### MAGISTRATE JUDGE'S FINDINGS
### AND RECOMMENDED DISPOSITION[1]

### Findings

1.      This is a proceeding on a petition for writ of habeas corpus brought under 28 U.S.C. § 2254, filed July 28, 2005 [Doc. No. 1].  Petitioner Gabriel Flores, currently confined at the Central New Mexico Correctional Facility in Los Lunas, New Mexico, challenges the judgment and sentence entered by the Ninth Judicial District Court in State v. Flores, No. CR 2001-231 (Curry County, New Mexico).

2.      As grounds for federal habeas review, Flores alleges ineffective assistance of counsel, conspiracy, double jeopardy, due process and civil rights violations, and insufficiency of the evidence to support his convictions.  Upon reviewing Flores' petition, it is difficult to ascertain his claims with

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

certainty.  For example, while Flores identifies one claim as "guilty unlawfully induced," his supporting allegations lead to the conclusion that he actually seeks to assert an ineffective assistance of counsel claim.  [Doc. No. 1, attachment to Petition, p. 1.]  The claim Flores articulates as "conviction by perjurious testimony," the Court reads to allege a claim of insufficiency of evidence to support his convictions.  [Id., p. 6.]

3.     Respondent identify four grounds underlying Flores' petition for habeas relief:  (1) ineffective assistance of counsel; (2) double jeopardy and civil rights violation when, in relation to habitual offender proceedings, the state judge requested Flores to identify himself as the same person convicted of a crime in 1991 [or 1993]; (3) refusal of Flores' trial counsel to represent him when Flores declined to enter into a guilty plea, counsel's purported threats that Flores would be deported, and counsel's conspiracy with the court to have Flores convicted and severely sentenced; and (4) conviction by use of perjured testimony consisting of a mentally challenged victim's testimony, her inability to answer certain questions at trial, and the fact that the victim's sexual history was not used to impeach her testimony.  [Doc. No. 12.]  Grounds three and four, according to Respondents, attempt to raise a sufficiency of the evidence claim.

## Factual and Procedural History

4.     On May 8, 2001, Dawna Culbertson, was having breakfast at a restaurant in Clovis, New Mexico before she went to work.  Ms. Culbertson was 33 years old, a resident of Clovis, and was employed as a cleaner with Eastern New Mexico Rehabilitative Services for the Handicapped, where she also received client services.  There was testimony during Defendant's criminal trial proceedings that Ms. Culbertson was mentally challenged.  She had the mental capacity of an 8-12 year old.  Ms. Culbertson and Flores did not know one another, but Flores was eating at the same

restaurant on May 8, 2001 and invited her to sit with him and another person.  After finishing her breakfast, Ms. Culbertson wanted to go the Family Dollar Store across the street from the restaurant but needed assistance in crossing the busy street.  Flores offered Culbertson a ride but ended up taking her to his home, where Flores allegedly raped her after giving her a $5.00 bill.  After engaging in sex, Flores returned Ms. Culbertson to the Family Dollar Store.  Shortly after the incident, Ms. Culbertson reported to her service coordinator at Eastern New Mexico Rehabilitative Services that she had been raped.  When interviewed by police, Flores denied any contact with Culbertson and later, contended that he had sex with her but that the sex was consensual, that Ms. Culbertson accepted payment for sex, and that Flores was not aware that Ms. Culbertson was mentally challenged.  [Trial Tapes.]

5.      On May 30, 2001, Flores was indicted by a grand jury of kidnaping, criminal sexual penetration ("CSP") and battery.  [RP at 1, Grand Jury Indictment.][2]  On June 18, 2001, Flores was arraigned.  He was represented through trial and part of the appeal by Public Defender Calvin R. Neumann.  [RP at 13.]

6.      During a pre-trial hearing on September 26, 2001, defense counsel stated that it was unlikely that a plea agreement would be reached.  [RP at 24.]  After several continuances, the trial was scheduled almost a year later – on September 3, 2002.  On September 3, defense counsel filed a motion for change of venue or for a continuance.  [RP at 55.]  Counsel argued in the motion that on September 1, 2002, the local newspaper ran an article or a "lead item" regarding Flores' trial and

---

[2]The Court obtained and reviewed the record proper in this case, including the state court file, portions of the pre-trial proceedings that were transcribed and 15 audio cassette tapes of Flores' arraignment proceedings, jury trial and sentencing.  The state court file is referred to as the record proper ("RP") in this opinion.  Some of the record proper does not contain page numbers, and the Court refers to exhibits attached to Respondents' Answer.  The audiotapes are referred to by type and number of tape, e.g., Trial Tape, No. 1.

that, while perhaps factually correct, the article would have an irrevocable prejudicial effect on the panel of jurors available.  Notwithstanding the motion,[3] jury selection and the trial proceeded on September 3rd.  [RP at 58, 105; 9/3/02 and 9/4/02 trial tapes.]  On September 4, 2002, a jury found Flores guilty of kidnaping and criminal sexual penetration ("CSP").  [RP at 59.]  The battery charge was dismissed before evidence was presented.  [RP 105, Trial Tape 2.]

7.     The Judgment and Commitment were entered on September 17, 2002.  [RP at 130.] Flores was committed to the Department of Corrections for 60 days for purposes of a diagnostic evaluation.  On November 26, 2002, pursuant to New Mexico's habitual criminal offender statute which provides for enhanced sentences for felons previously convicted of a prior felony, a Supplemental Criminal Information was filed.  It set out Count I (conviction of aggravated battery on May 4, 1993) and Count II (the present conviction by a jury trial).  [RP at 134.]  On December 5, 2002, Flores was sentenced.  At the sentencing, Flores admitted he had a prior felony conviction as he had pled guilty to a felony offense in 1993.  [RP at 143, 12/5/02 Sentencing Tape 1.]  The Court informed Flores that he had a right to a bench trial as to his identity regarding the prior conviction and that the State was seeking to enhance his sentence on his current conviction by one year as a result of the prior felony.  Flores stated that he could not deny the earlier conviction and that he pled guilty to the charge.  [Id.]  Flores argued that he was not the same man he used to be and that he should not be harassed for something he did ten years earlier, but he waived his right to a hearing on identity.  [Id.]

---

[3]The Court inquired of prospective jurors whether they had read the newspaper article, and if so, whether it would influence their decision in the case.  [RP at 106.]  The Court decided that although some jurors had read the article the panel was not tainted by it.  [Trial Tape 9.]  Therefore, the Court denied Flores' motion for change of venue or for continuance.

8.      The Judgment, Sentence and Order Determining Habitual Offender Status was entered on December 31, 2002.  Flores received a total term of incarceration of 17 years, in part because of aggravating factors found by the Court (e.g., that Flores was aware or should have been aware of the victim's mental deficiencies) and because of the enhancement based on Flores' habitual offender status.

9.      On January 29, 2003, Flores appealed his conviction.  Neumann continued as counsel for Flores, although federal defender appellate counsel also participated in some of the briefing.  [RP at 158, 160.]

10.     On March 26, 2003, Neumann filed Flores' appellate docketing statement.  [RP at 165.]  After reciting evidence presented at trial, Flores presented two issues on appeal: (1) insufficiency of evidence with respect to Flores' convictions of kidnaping and CSP; and (2) abuse of discretion by court to have proceeded to trial in view of newspaper publicity.  [RP at 172.]

11.     On April 9, 2003, the New Mexico Court of Appeals issued a Proposed Summary Affirmance of Flores' convictions.  [RP at 188.]  Defendant filed a brief in opposition to the proposed affirmance.  On May 28, 2003, after considering Flores' brief in opposition, the Court of Appeals affirmed Flores' prior convictions.[4]

12.     On July 17, 2003, Flores filed a petition for writ of certiorari, presenting the same two questions for review.  [Doc. No. 12, Ex. H.]  On July 24, 2003, the New Mexico Supreme Court denied the petition for writ of certiorari.  [Doc. No. 12, Ex. I.]  On August 22, 2003, the Clerk of the Supreme Court issued the Court's mandate.  [Doc. No. 12, Ex. J.]

---

[4]At some point in the Record Proper there are no longer page numbers.  In addition, the Record Proper is not always in chronological order.

13.     In late 2003, Flores, acting *pro se*, filed a state habeas petition.  [Doc. No. 12, Ex. K, Respondents' date-stamp of 12/1/03.]  On December 4, 2003, he filed a pleading entitled "petition addition on habeas corpus . . .".  [Doc. No. 12, Ex. K.]  He may have raised a claim of violation of double jeopardy in the "petition addition" but it was not entirely clear.  In the full state habeas petition, Flores checked off several choices for his alleged grounds for relief:  "conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily, conviction was obtained by use of coerced confession, and denial of effective assistance of counsel."  Flores supplied supporting facts alleging, in part, that attorney Neumann refused to attend a court setting that resulted in Flores being found guilty and in infuriating the state court judge.  Flores also alleged that his attorney sabotaged his trial through previous arrangements with the state prosecutor.  In addition, he asserted that his conviction was obtained by obstruction of justice and was the product of illegal discrimination, intimidation and harassment.  More specifically, Flores claimed that his attorney never made objections during trial and did not effectively cross-examine the victim.  Flores further asserted that his offense was "sex for hire" rather than CSP.  It is not clear when the full habeas petition was filed with the state court, but the signature page was notarized on October 31, 2003.  Flores attached additional hand-written pages to the petition alleging ineffective assistance of counsel and conspiracy.  [Doc. No. 12, Ex. K.]

14.     On January 20, 2004, the Ninth Judicial District Court entered an order summarily dismissing Flores' state habeas petition.  [Doc. No. 12, Ex. L.]  The trial judge noted Flores' claim of insufficiency of evidence, his argument regarding the request to change venue, his position that he was guilty of "sex for hire," and his allegation that the local newspaper had published an article defaming him.  The state court judge also observed that Flores asserted an ineffective assistance of

counsel claim against his trial and appellate counsel, alleging defense counsel's conspiracy with the prosecution and "sabotage." The state court found no factual basis for the allegations and concluded that Flores was not entitled to habeas relief.

15.     There is a hand-written pleading in the record proper, dated January 22, 2004, that Flores addressed to the Clerk of the Court for the Ninth Judicial District. In that pleading, Flores stated that he submitted a habeas petition to the state court during the second week of November 2003. Flores argued that the state court was tardy in reviewing his state habeas petition. He apparently had not yet received the state court's summary dismissal of that petition, dated January 20, 2004.

16.     On February 19, 2004, Flores filed a petition for writ of certiorari. [Doc. No. 12, Ex. M.] The questions presented for review concerned Flores' claim that he was tried twice for the same offense (double jeopardy), that he was compelled to testify against himself, and that his defense counsel "never got involved" in his case. Flores stated that he had filed a state habeas petition but was never granted a hearing. In the "description of the proceedings," Flores contended that he was "set up" with respect to the charges and convictions of CSP and kidnaping. He further alleged that between May 30, 2001 and June 7, 2001, his attorney resorted to tactics of intimidation, harassment and threats of deportation. Flores argued that a court order was entered on June 18, 2001, setting a trial date but that Flores' attorney refused to go to trial then. Flores' attorney allegedly told him that Flores could go to trial if he wished but that he should not proceed to trial because counsel believed Flores would be found guilty. Flores alleged that he tried to convince his attorney that they had to go to trial because it was a jury trial and the witnesses would be there. Flores wrote that he was sorry he took counsel's advice to skip court because he was found guilty on all charges.

17.     Flores also set out in detail many contentions regarding the victim's testimony at trial and why it should not have been believed.  For example, Flores argued that he paid the victim for sex, that she accepted and took $5.00 from Flores, and that she willingly went into a car with Flores.

18.     On March 4, 2004, the New Mexico Supreme Court denied Flores' petition for writ of certiorari.  [Doc. No. 12, Ex. N.]

19.     On April 15, 2004, Flores filed another habeas petition.  Flores used a federal habeas form, although the petition was filed in the State's Ninth Judicial District Court.  [Doc. No. 12, Ex. O.]  In this petition, Flores claimed "they" made up the charges against him "with the help of a parcially handcop prostitute women."  That state habeas petition apparently was never decided, or at least there is no such record of a decision by the state court.

20.     On October 25, 2004, Flores filed his first federal habeas petition, No. CIV 04-1225 MCA/LFG.  [Doc. No. 12, Ex. P.]  He claimed "civil rights violation against double jeopardy" and ineffective assistance of counsel.  He also asserted that the conviction was "induce[d] unlawfully and not made voluntar[ily]" and the conviction was attained through the "knowing use of perjured testimony [the victim] gave [during trial]."  [Id., p. 5.]  Attached to his petition, Flores provided part of the state court docket with his annotations.  For example, he claimed that a September 26, 2001 pre-trial conference never took place or was ignored by his attorney, that the date on which the state filed its notice of intent to seek aggravation of sentence was "the conspiracy date," that his attorney advised Flores to skip a trial setting or proceeding (at which point Flores believes the court and counsel determined Flores was guilty of all charges before the jury trial ever took place), and that the appearance bond of $35000.00 was a "fake bond by counsel."

21.      The State filed a motion to dismiss the first federal habeas petition, and on January 19, 2005, this Court issued proposed findings and a recommendation that the motion be granted and the petition dismissed, without prejudice.  [Doc. No. 20 in No. CIV 04-1225.]  Respondents argued that while one of Flores' claims was exhausted (ineffective assistance of counsel), the two other claims (relating to an alleged double jeopardy violation and an "unlawfully induced conviction" or perhaps a claim of insufficiency of the evidence) had not been exhausted.  However, as noted by Respondents, Flores had filed a second state habeas petition that raised all of these claims, which was still pending before the state district court.  Because it appeared that Flores brought a mixed petition in this earlier federal habeas case, the magistrate judge recommended that Flores' petition be dismissed without prejudice.   On February 28, 2005, the District Court adopted the proposed findings and recommended disposition, thereby dismissing Flores' first federal habeas petition, without prejudice. [Doc. No. 12, Ex. U.]

22.      On June 7, 2005, Flores filed a third state habeas petition in the Ninth Judicial District Court.  [Doc. No. 12, Ex. V.]  Flores alleged that his guilty conviction was unlawfully induced, his defense counsel refused to represent him, his right to protection against double jeopardy was violated, he received ineffective assistance of counsel when his defense attorney used tactics of intimidation, harassment and threats to try to force Flores to enter into a guilty plea, and conspiracy.  [Id.]  Flores also contended that there was no evidence to support the convictions and that it was an abuse of discretion for the court to have required Flores to proceed to trial in view of the local newspaper article.  Essentially, the same lengthy allegations that support the present (second) federal habeas petition were set forth in the third state habeas petition.

23.     On June 7, 2005, the Ninth Judicial District Court judge entered an order summarily dismissing the (third) state habeas petition.  Based on the court's order, it does not appear that the court was aware of the second state habeas petition that apparently remained undecided.  This could have occurred because that petition was mistakenly filled out on a federal habeas form even though file-stamped in the state court.  In any event, the state court denied the third state habeas petition which was similar to the second state habeas petition.  [Doc. No. 12, Ex. W.]

24.     Also on June 7, 2005, a law clerk to the Ninth Judicial District Court, wrote a letter to Flores regarding his "second" (which this Court considers to be his third) state habeas petition.  The clerk informed Flores that there was no provision in the law for his request for the court to reconsider its denial of Flores' earlier (first) state habeas petition.  The clerk explained that the state court is vested with the authority to summarily dismiss a habeas petition, which is what the state court did with both of Flores' known habeas petitions.  [Doc. No. 12, Ex. W, letter.]

25.     On June 15, 2005, Flores filed a petition for writ of certiorari.  On July 20, 2005, the New Mexico Supreme Court denied his petition for writ of certiorari.  [Doc. No. 12, Ex. Y.]

26.     On July 28, 2005, Flores filed the second federal habeas petition that is presently before the Court.  [Doc. No. 1.]  On September 2, 2005, Respondents filed an Answer and a Motion to Dismiss with an accompanying brief.  [Doc. Nos. 10, 11, 12.]

27.     On November 17, 2005, Flores submitted a hand-written request in this matter that the Court construed as a request for an extension of time in which to file a response to the Motion to Dismiss.  [Doc. No. 13.]  The Court granted Flores an extension of time until December 23, 2005, in which to respond to the Motion to Dismiss.  Flores did not submit a response or any other pleading subsequent to his November 17, 2005 request.

10

28.     On February 6, 2006, the Court ordered the record proper in the underlying criminal matter to ensure proper analysis of any claim that Flores raised challenging the sufficiency of the evidence supporting his convictions.   The Court reviewed the record proper and accompanying audiotapes of the state court trial proceedings.

## Discussion

## Exhaustion of Remedies

29.     Respondents concede that Flores exhausted his remedies but argue that he advances no cognizable claim under 28 U.S.C. § 2254.  Respondents addressed whether Flores' claims might be time-barred but agreed that because of the somewhat complicated procedural history of Flores' state court filings, the present federal petition would not be time-barred.  [Doc. Nos. 10, 11.]

## Deference to State Court Adjudications

30.     A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000).  "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  Thompson v. Oklahoma, 202 F.3d  283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan.10, 2000), *cert. denied*, 530 U.S. 1265, 120 S.Ct. 2725 (2000).

31.     Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state

court's factual findings and legal determinations."  Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th

Cir. 1997).  The Tenth Circuit Court of Appeals further explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case.  'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, the application must also be unreasonable.'  'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'  AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (relying on 28 U.S.C. § 2254(e)(1)).

32.     Before reaching Flores' habeas claims, the Court determines whether the state court

adjudicated the claims on the merits.  The state court's denial of Flores' first habeas petition was

denied "summarily" but in so doing, the court stated that it reviewed the petition, the record in

District Court and Flores' appeal.  The Court also made a number of specific findings with respect

to Flores' habeas claims and arguments.  [Doc. No. 12, Ex. L, p. 2.]  In the state court's denial of

Flores' next habeas petition, the court again entered an order "summarily" dismissing the petition,

noting that the claims in the second petition were essentially the same issues presented in the first

petition.  The state court concluded that Flores was not entitled to any relief.  [Doc. No. 12, Ex. W.]

While the state court summarily denied the petitions, it did not premise its denial of Flores' claims on

technical defects or procedural irregularities.  Rather, the court reviewed the entire district court

record and Flores' appeal along with his habeas petition(s).

33.     There is authority for the proposition that a court's summary dismissal of a habeas petition constitutes an adjudication on the merits. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA, to state court's rejection of claim's merit, despite lack of any reasoning); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999), aff'd, 528 U.S. 225, 120 S.Ct. 727 (2000); Swann v. Taylor, 173 F.3d 425 (Table, Text in Westlaw), 1999 WL 92435 at *11 (4th Cir.), cert. denied, 526 U.S. 1106, 119 S.Ct. 1591 (1999). See also Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicated a cursory or haphazard review of a petitioner's claims). The Court concludes that Flores' claims were adjudicated on the merits in state court and are, therefore, subject to review under the standard set forth in 28 U.S.C. § 2254(d).

### Ineffective Assistance of Counsel Claim

34.     An accused has a Sixth Amendment right to assistance of counsel in a criminal prosecution, which includes the right to effective assistance of counsel at trial. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64 (1984). "The essence of a claim of ineffective assistance is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582 (1986).

35.     To establish ineffective assistance of counsel, Flores must make a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To prove deficient performance, Flores must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v.

Reynolds, 139 F.3d 768, 776 (10th Cir.), *cert. denied*, 525 U.S. 933, 119 S.Ct. 345 (1998).  Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight.  Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062, 116 S.Ct. 743 (1996).  In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied*, 522 U.S. 844, 118 S. Ct. 126 (1997).

36.    In support of his ineffective assistance of counsel claim, Flores alleges:  trial counsel Neumann "deceived him into skip court to make him guilty;" "without previous notice, counselor Calvin Neumann refused to attend a court hearing with defendant and enticed him to skip court by deceit only to make defendant guilty on all charges, since defendant under intimidation, harassment and a threat of deportation refused to plead guilty;" Neumann "refused to represent defendant in a court hearing and advised defendant to skip court to make him guilty;" upon receiving a notice from the state court on June 18, 2001 setting a hearing, Neumann told Flores that Neumann would not attend the court proceeding and advised Flores not to attend; attorney Neumann joined in a conspiracy with the district attorney and state court judge to arrange that Flores be required to serve more time; and, trial counsel did not effectively cross-examine the victim during trial or attempt to impeach her through her purported prior sexual history.  [Doc. No. 1.]

37.    Flores' repeated allegations that trial counsel skipped a hearing or refused to represent Flores at a court proceeding are contradicted by the record proper in this case.  To the extent that Flores believed he had a trial setting or any court proceeding on June 28, 2001, this is incorrect. Flores was arraigned on June 18, 2001.  [RP at 10, 6/18/01 Tape.]  At that time, the Court set a pre-

14

trial conference on September 26, 2001, and the jury trial for October 25, 2001.  Nothing in the record indicates a court proceeding on June 28, 2001.  However, on June 28, 2001, the trial court entered a written notice of the October 25, 2001 trial setting.  [RP at 14.]  There is nothing in the record proper to indicate that attorney Neumann failed to appear for or skipped any court proceeding.  The record simply does not support Flores' claims.  Indeed, on June 18, 2001, during the arraignment, Flores told the Court that Neumann was doing a good job as his counsel.  [6/18/01 Arraignment Tape.]

38.     On September 26, 2001, the court record shows that Neumann appeared at a pre-trial conference as scheduled and that Flores was present.  [RP at 24-25; 9/26/01 Pre-Trial Conference tape.]  While the state prosecutor indicated that there were ongoing plea negotiations, Flores' attorney stated that it was unlikely any plea agreement would be reached.  It was the state prosecutor who first discussed the need for a continuance of the October 2001 trial date.  In an Order entered October 22, 2001, the court vacated the October trial setting, noting that both Flores and his attorney stated they would not oppose an extension of the six-month rule.  [RP at 28.]

39.     On February 25, 2002, the State again requested a continuance of the jury trial set for February 28, 2002 because it needed additional time to obtain the DNA test results for trial.  [RP at 41.]  In an Order dated March 11, 2002, the New Mexico Supreme Court granted the request for an extension until September 3, 2002 (at which time the trial was held).  [RP at 43.]

40.     The Court finds nothing to support Flores' allegations that his attorney skipped a court proceeding or advised Flores to miss any court proceedings.  Moreover, there is no evidence in the record that the two requests to continue the trial setting were improper or prejudicial to Flores.  In addition, no evidence is supplied by Flores to demonstrate that his guilt was determined before his

jury trial was held in September 2002, nor could there be any such evidence.  The jury was not empaneled before the September 2002 trial date, and no one, but the jury, determined Flores' innocence or guilt.

41.     Flores' allegations that his attorney attempted to coerce him into entering a guilty plea, through threats of deportation, intimidation or harassment, are unfounded.  Flores did not enter into a plea of guilty, but rather elected to proceed to trial and did so.  Thus, even if Flores' attorney attempted to convince him that a guilty plea would be preferable to going to trial, counsel was unsuccessful.  There was no guilty plea.  Flores' allegations utterly fail to demonstrate constitutionally defective assistance of counsel.

42.     Similarly, there is no evidence that attorney Neumann conspired with the state prosecutor or court to enhance Flores' sentence.  The State notified Flores, as early as July 9, 2001, of its intent to seek aggravation of Flores' sentence based on Flores' prior conviction.  [RP at 16.] Thus, it was the State, not Flores' attorney, who sought the enhancement.  Moreover, Flores conceded to the state court judge that he pled guilty to a prior felony in 1993, and he expressly stated that he was not denying the prior felony conviction.  [12/5/02 Sentencing Tape 1, RP at 143.]  Flores asserted that he had served his time for that offense and was "free of it."   However, the fact that Flores served his time for the prior offense does not preclude the State from seeking enhancement of his sentence for a subsequent conviction, based on that prior conviction.  New Mexico law provides for an enhancement of a sentence under those circumstances, and that is what occurred in this case.  The state court judge explained the effect of this law to Flores and Flores admitted more than one time that he was the person convicted of a prior felony in 1993.  [12/5/02 Sentencing Tape 1.]  Flores' allegations of conspiracy fail to state a claim for federal habeas relief, and to the extent

16

that Flores intended such allegations to support an ineffective assistance of counsel claim, he fails to show that counsel acted in a constitutionally defective manner with respect to the enhancement of his sentence.

43.     Flores also asserted that his attorney could have been more aggressive in his cross-examination of the witness at trial, should have impeached the victim with evidence of her prior sexual history and also should have made more objections at trial. The Court has reviewed the trial tapes, including trial testimony of the victim and Flores. Flores' counsel did make an appropriate objection that was sustained during the prosecution's direct examination of the victim. Defense counsel also made several appropriate objections during the State's cross-examination of Flores.

44.     To the extent that Flores believed the victim should have been more aggressively cross-examined, defense counsel made a tactical decision, one that the Court will not second-guess. In evaluating a claim of ineffective assistance of counsel, the court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quotation omitted). Here, after listening to the examinations of the victim during trial and observing that the victim broke down in tears during defense counsel's cross-examination, this Court believes that counsel made a reasonable strategic decision in not pursuing the victim more aggressively than he did. [9/3/02 Trial Tape #7.] An aggressive attack on a mentally challenged victim of a sexual assault could well have evoked anger directed at the defense. In addition, to the extent that the victim had a prior sexual history that might have been used to impeach her trial testimony, such evidence is generally inadmissible under federal and state court rules. *See, e.g.,* Fed. R. Evid. 412(a).

17

45.     None of Flores' allegations of ineffective assistance of counsel, taken together or alone, constitute sufficient facts to show that his attorney's representation fell below an objective standard of reasonableness.  Moreover, even if Flores could make such a showing, he provides no evidence to establish prejudice.  In other words there is no evidence that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. 687-88.

46.     In addition, the state court reviewed Flores' claims of ineffective assistance of counsel and summarily denied those claims.  In giving the state court the appropriate post-AEDPA deference that is required by § 2254, the Court recommends finding that the state court's adjudication of the ineffective assistance of counsel claims did not result in any decision that was contrary to or involved an unreasonable application of clearly established federal law.  Similarly, the Court finds that the state decision was not based on any unreasonable determination of the facts in light of the pertinent evidence discussed by the parties and state court.

## Double Jeopardy Claim

47.     Flores' double jeopardy claim appears to be premised on the position that his sentence was improperly enhanced by his prior felony conviction in 1993.  In support of this claim, Flores states that "an old case of 10 years before [was] used to make me guilty of avitual." [Doc. No. 1, attachment, p. 2.]  The Double Jeopardy Clause prohibits successive prosecutions for the same offense, and multiple punishments for a single offense.  United States v. Dixon, 509 U.S. 688, 695-96 (1993).  Here, Flores fails to state a claim that his right to protection from double jeopardy was violated.  The United States Supreme Court explicitly found that enhanced punishment for recidivist

conduct does not violate the Double Jeopardy Clause. *See, e.g.*, <u>Gryger v. Burke</u>, 334 U.S. 728, 732, *reh'g denied*, 335 U.S. 837 (1948).

48.    In addition, the state court considered Flores' double jeopardy claim and dismissed it. [*See, e.g.*, Doc. No. 12, Exs. V, W.]   In giving the state court the appropriate post-AEDPA deference that is required by § 2254, the Court recommends finding that the state court's adjudication of the double jeopardy claim did not result in any decision that was contrary to or involved an unreasonable application of clearly established federal law.   Similarly, the Court finds that the state decision was not based on any unreasonable determination of the facts in light of the pertinent evidence discussed by the parties and state court.

<u>**Sufficiency of Evidence Claim**</u>

49.    Flores' remaining claims, to the extent that they can be identified, appear to raise allegations that the evidence at trial was not sufficient to support his convictions.   For example, Flores challenges the victim's testimony and contends she lied.   He essentially asserts that his version of the events was more credible, i.e., that he paid the victim $5.00 for sex, that she voluntarily acquiesced, and that he had no idea that the victim was mentally challenged at the time of the incident.

50.    With respect to a challenge to the sufficiency of the evidence, clearly established federal law provides that the court review the record as a whole and consider the evidence in the light most favorable to the prosecution.   The pertinent inquiry is whether the evidence is such that any reasonable jury could find the defendant guilty beyond a reasonable doubt.   <u>Jackson v. Virginia</u>, 443 U.S. 307, 317, 99 S.Ct. 2781 (1979); <u>United States v. Hien Van Tieu</u>, 279 F.3d 917, 921-22 (10th Cir. 2002).   In reviewing the evidence, the court does not weigh conflicting evidence or consider witness credibility as those were duties delegated to the jury.   <u>Hien Van Tieu</u>, 279 F.3d at 921.   The

New Mexico Supreme Court applies this same standard of review for sufficiency of the evidence claims. *See* State v. Griffin, 116 N.M. 689 (1993); State v. Hernandez, 115 N.M. 6 (1993).

51.     Here, both the victim and Flores testified at trial and presented their versions of what occurred on the day in question.  Ms. Culbertson testified that she had never met Flores before he approached her in a local restaurant, that she had only wanted Flores to accompany her across the street to a nearby retail store because she was uncomfortable crossing the street alone, and that Flores, instead, asked her to get into his car, drove her to his house, told her he wanted to watch television with her and then raped her, after giving her a $5.00 bill.  The victim also testified that she told Flores she did not want to have sex with him but that he pulled down her pants and pinned her by the arms and legs.  Flores testified that he engaged in a consensual sexual encounter with Ms. Culbertson, that she knew what Flores wanted and that she acquiesced to sex with him in exchange for $5.00.

52.     There was testimony at trial by Flores that he was not aware that Ms. Culbertson was mentally challenged.  Testimony was also presented that Ms. Culbertson had the mental capability of an 8 year old and that she reported having been raped shortly after the incident.  [Trial Tape 7, Shirley Cortez Testimony, Officer Carr Testimony.]  Flores testified at trial that he initially told the police he was cleaning his house when Ms. Culbertson was at his house on the day in question.  He testified that he did not need to tell the police what actually occurred and that only his attorney was entitled to that information.  At trial, Flores denied having lied to the police and instead testified that he "declined" to tell police officers what occurred between him and the victim.

53.     In viewing the evidence in the light most favorable to the prosecution, this Court determines that there was sufficient evidence to support the jury's verdict.  It is the trier of fact's duty

to "fairly . . . resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  Here, the jury was free to believe the victim's or Flores' version of events, and there was ample evidence to support Ms. Culbertson's  testimony.  For example, there was evidence presented that Ms. Culbertson almost immediately reported she had been raped.  On the other hand, Flores initially denied that any sexual encounter occurred when police officers picked him up for questioning and then later changed his story by asserting that he had engaged in consensual sex with the victim for $5.00.

54.     The only evidence presented supporting Flores' version of the events was his own self-serving testimony. Flores provided no argument explaining why his version of the incident in question was more credible than that of the victim's.  It is up to the trier of fact to make the credibility determinations that it did, and this Court "must accept a jury's resolution of the evidence so long as it is within bounds of reason." Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quotation omitted).  The Court concludes that the jury's resolution of the evidence in this case was "within the bounds of reason."

55.     Finally, the state court dismissed Flores' habeas petition that raised the sufficiency of evidence claim.  [Doc. No. 12, Exs. L, W.]  Moreover, on appeal, the New Mexico Court of Appeals issued a written opinion expressly considering all of the trial testimony, along with Flores' argument that his version of the events was more credible.  The Court of Appeals rejected Flores' insufficiency of the evidence claim concluding that the jury was "free to reject Defendant's version of the facts." [Doc. No. 12, Ex. G, p. 2.]  In applying the appropriate amount of deference to the state court's results, this Court does not find that the state court's decisions involved an unreasonable application of federal law or an unreasonable determination of the facts.

**Recommended Disposition**

56.     The Court concludes that none of Flores' claims entitle him to federal habeas relief and therefore, recommends that Respondents' motion to dismiss [Doc. No. 10] be granted, with the result that Flores' § 2254 petition [Doc. No. 1] be denied and all of his claims dismissed, with prejudice.


                                              _Lorenzo F. Garcia_____
                                              Lorenzo F. Garcia
                                              Chief United States Magistrate Judge

22